# THE STATE v. CAROL T. BYRD, Appellant.

Division Two, June 3, 1919.

1. **INDICTMENT: Misspelling Word.** Spelling the word premeditatedly "premediatedly" twice in an indictment charging murder in the second degree, whether a clerical error or mistaken orthography, did not tend to prejudice the substantial rights of the defendant on the merits, and constitutes no valid objection to the sufficiency of the indictment.

2. **INSTRUCTION: Referring to Indictment.** Reference in an instruction to the indictment does not constitute prejudicial error unless it leaves to the jury no other alternative to determine their duty than such reference.

3. ————: **Shot Fired by Another: Aiding and Abetting: No Evidence.** An instruction, based on the assumption that there was testimony that another than defendant had fired the fatal shot and telling the jury that if they believe defendant was present, aiding and abetting, they may find him guilty, is error, if there is no evidence to sustain the assumption; and if it rests upon nothing more substantial than that the fatal shot may have been fired by another, a conviction cannot be sustained.

4. **REMARKS OF PROSECUTING ATTORNEY: Abuse of Defendant: Preservation for Review.** Flagrant personal abuse of defendant, and statements not based on testimony, if properly preserved for review, will work a reversal; but if no exceptions were saved to adverse rulings on objections thereto, and no requests were made that the prosecuting attorney be rebuked, they cannot be considered on appeal.

5. **INSTRUCTION: Good Character.** The statute (Sec. 5231, R. S. 1909) requires that an instruction upon good character be given "whenever necessary," and those words mean that such an instruction should be given whenever there is substantial evidence adduced of good character, and not otherwise.

Appeal from Jefferson Circuit Court.—*Hon. E. M. Dearing*, Judge.

REVERSED AND REMANDED.

*P. S. Terry, Charles J. White,* and *Clyde Williams* for appellant.

(1) Instruction numbered one refers the jury to the indictment to determine what they must find in order to convict, and is therefore erroneous. State v. Constitino, 181 S. W. 1155; State v. Baker, 246 Mo. 374; State v. Marion, 235 Mo. 375; State v. McCaskey, 104 Mo. 644; State v. Brown, 104 Mo. 365. (2) Instruction 2 is erroneous because it does not define all the elements of murder in the second degree and because there is no evidence of a common purpose on the part of defendant and anyone to kill the deceased, and there is no evidence to support it. State v. Darling, 216 Mo. 464; State v. Meyers, 174 Mo. 359; State v. Hickman, 95 Mo. 332; Brouster v. Fox, 117 Mo. App. 724; 16 Corpus Juris, p. 128, sec. 115; 12 Cyc. 188; 12 Cyc. 189, n. 57; Horton v. Commonwealth, 99 Va. 848. (3) The court failed to instruct on all the questions of law in the case. Sec. 4468, R. S. 1909. (4) The prosecuting attorney made improper and prejudicial statements in his argument to the jury; (a) In abusive language; (b) Going oustide the record; (c) Misstating the law. State v. Young, 99 Mo. 683; State v. Reed, 71 Mo. 200; State v. Mahly, 68 Mo. 319; 12 Cyc. p. 584 (C). (5) The court failed to instruct on the good character of defendant. R. S. 1909, sec. 5231; State v. Anslinger, 171 Mo. 600.

*Frank W. McAllister,* Attorney-General, and *Henry B. Hunt,* Assistant Attorney-General, for respondent.

(1) The indictment is sufficient. Sec. 4449, R. S. 1909; Kelley's Crim. Law, sec. 474; State v. Conley, 255 Mo. 187, 196. (a) The words "dangerous and deadly weapon" were not necessary to this indictment. State v. Miller, 264 Mo. 404. (b) The misspelling of the

word premeditatedly is not reversible error. State v. Morehead, 271 Mo. 87. (2) Instruction 1, when read in connection with instruction 6, is not fatally erroneous because it refers the jury to the indictment. State v. David, 131 Mo. 396, 398; State v. Washington, 242 Mo. 408; State v. Coleman, 186 Mo. 161; State v. Layton, 191 Mo. 615. (a) Instructions must be considered all together, and if, as a whole, they present all the essential elements of the offense, they are not erroneous. State v. Kinder, 184 Mo. 295; State v. Montgomery, 230 Mo. 671. (3) Instruction 2 is not erroneous. It requires the jury to find the constituent elements of murder in the second degree; and the evidence clearly shows that appellant, with others, was pursuing and shooting at deceased. Sec. 4898, R. S. 1909; State v. Orrick, 106 Mo. 119; State v. Valle, 164 Mo. 550, 551; State v. Gooch, 105 Mo. 396, 397; State v. Miller, 156 Mo. 86; State v. Murray, 193 S. W. 832. (a) Proof of aiding and abetting may be by circumstantial evidence. State v. Gooch, 105 Mo. 396; State v. Valle, 164 Mo. 551; State v. Darling, 199 Mo. 199; Brouster v. Fox, 117 Mo. App. 723, 724. (4) Instruction 5, limiting the effect to be given the evidence as to appellant's bad reputation, is in approved form. State v. Weeden, 133 Mo. 78, 84; State v. Phillips, 233 Mo. 306. (5) The court's failure to instruct on appellant's good character was not error. The only evidence adduced was as to appellant's character as a witness and not as a defendant. Sec. 5231, R. S. 1909; State v. Cook, 207 S. W. 833; State v. Anslinger, 171 Mo. 607; State v. Beckner, 194 Mo. 292; State v. Kelly, 73 Mo. 616; State v. Gartrell, 171 Mo. 519. (6) The remarks of counsel complained of are not before this court for review. State v. Baker, 264 Mo. 353; State v. Phillips, 233 Mo. 307; State v. Souva, 234 Mo. 571; Morris v. Railroad, 239 Mo. 721; State v. Connors, 245 Mo. 477; State v. Humfeld, 182 Mo. App. 644.

WALKER, J.—Defendant was indicted in the Circuit Court of Jefferson County for murder in the second degree, charged with the killing of one Rae Sellers, by shooting him with a pistol. Upon a trial, he was found guilty, as charged, and sentenced to ten years' imprisonment in the Penitentiary. From this judgment he appeals.

The deceased was employed as an electrician by a street fair company, while the latter was holding what was termed a carnival at Crystal City. The exhibitions of the company were conducted in a series of tents. The deceased, a short time before he was shot, had been engaged in an altercation which, from the record, appears to have been limited to words with a cook employed by the company, which arose from the deceased having cut the lighting wires which connected the cooking tent with the dynamo, or source of supply. Immediately after this difficulty the deceased was seen running northwardly up the midway between the tents of the company, pursued by appellant and one Cross, the former being the township constable, and the latter the marshal of Crystal City. As is always the case in occurrences of this character, there was a marked variance in the testimony of the eye witnesses.

One witness stated that Cross was in the lead and that both officers fired their guns twice in the air; that they called to the deceased to halt, but he ran on north for about one hundred yards, the officers following him for about fifty yards, and turned to the east at one of the tents. Another witness saw appellant shoot his pistol straight in front of him in the direction of the deceased, the appellant being at the time about twenty feet behind the deceased. Courtois and DeClue, two boys who were riding in a Ferris wheel, saw some men running toward the river away from the show tents, a little, heavy-set man and a tall man, both shooting straight out from their hands. These descriptions

suited appellant and Cross. Courtois saw the appellant shoot while running, but neither he nor DeClue saw the man who was being pursued. Another witness saw appellant and Cross running after a man, and saw shots fired by them, but did not know which one of them did the shooting.. Still another witness heard appellant call upon deceased to stop and saw the former shoot straight in front of him in the direction of the deceased. Cross did not shoot.

Deceased ran north up the midway to the company's Ferris wheel, turned east toward the back of the show grounds, between the Ferris wheel and one of the tents, and then ran toward the Mississippi River.

Appellant and others ran northeast between the tent aforesaid and the Ferris wheel, and shortly after they passed, two or three shots were fired close together, back of the tents and north of the Ferris wheel. At the same time there was shooting going on in one of the tents.

The Ferris wheel operator saw appellant pursuing the deceased at the time the latter ran toward the east and back of the show grounds. Appellant was ten or fifteen feet behind deceased, with a gun in his hand. When they got to the managing officer's tent, appellant turned north, and, from a distance of ten feet, shot toward deceased, stopped to look, and went on north.. This witness saw the deceased fall behind one of the tents.

Another witness, John Bacheler, testified that he saw appellant bending over the body of the deceased back of the dance hall. The body was lying face down, with the head toward the north. Bacheler saw appellant turn the body over and heard him say, ''Somebody get a doctor; I have shot the wrong man.''

This, was, in substance, the testimony for the State.

The testimony on behalf of the appellant tended to prove the following facts:

Upon the night in question, appellant went to the cook tent, upon a boy telling him there was trouble between the cook and the electrician. The trouble was over when he got there. He stood around for about ten minutes, and the trouble started up again. The cook jumped over the counter with a knife, and the electrician ran. Appellant and Cross took after him and called for him to stop, and appellant fired two shots in the air, but did not shoot parallel with the body of the deceased, nor did he shoot through the crowd in the midway. The deceased ran close to a lemonade stand, turned in between some tents, and then went east toward the Mississippi River. Appellant did not see him in the road east of the tent, nor after he left the tent, nor did he shoot him or fire a shot near the manager's tent; he fired only two shots in the midway. Three or four shots were fired ahead of appellant, but he had nothing to do with them.

Mr. Wilson, one of the showmen, found the body and saw appellant go to it, and an unknown man ran north of where the body was lying. The body was about forty feet west from where appellant started.

Appellant admitted that when he went to it, he helped turn the body over, but that he did not say. "Get a doctor; I have shot the wrong man." Several other witnesses confirm his testimony in this behalf. Other witnesses testified that appellant did not carry a 32 automatic on the evening in question, but carried a 45 Colt's automatic, but that he owned a 32 automatic that shot the kind of bullet introduced in evidence; that one Jake Bennett stood back of one of the tents and shot northeast, the body being found about twenty-five feet northeast from where Bennett stood; that Bennett delivered to Meyers, nightwatchman of Crystal City, a 32 automatic revolver a short time after the killing, and was very nervous and excited, stating that it looked very black for him; that Bennett was arrested,

and held until after the inquest, when he was discharged; that a 32 steeljacketed bullet, such as is used in a 32 automatic pistol, could be fired from the revolver turned over by Bennett; that the reputation of State's witness, Bacheler, for truth and veracity, was bad.

The evidence on behalf of appellant shows that the electrician who had the trouble with the cook was the fugitive, and that he was the one who was killed.

In rebuttal, the State introduced evidence tending to prove the following facts:

That Bennett's revolver was examined by one of the jurymen at the inquest, who saw that it was loaded, containing five cartridges, one of which had been fired; that the bullets were lead and not steel; that the exploded cartridge appeared like the others; that Bennett remained in that locality until August, 1917, and was, at the time of the trial, in the U. S. Army; that the revolver in question was picked up off of the ground by Bennett near the animal show, five or ten minutes after the shooting; that during the first part of the month of April, 1917, appellant was seen with a small automatic pistol, a 32 or 38 caliber, in his possession, said pistol being smaller than the pistol introduced in evidence by appellant; that the reputation of appellant for morality and good citizenship was bad.

I. The indictment is framed with the iterative and prolix particularity of a charge at common law. It defines the essentials constituting murder in the second degree and its subject-matter is not open to valid objection. Twice in the indictment the word "premeditatedly" is spelled "pre-med-i-a-ted-ly." Whether this is a clerical error or mistaken orthography does not appear. In either case it constitutes no valid ground of objection to the sufficiency of the charge in that it in no wise "tended to prejudice the substantial rights of the defendant on the merits."

**Indictment.**

[Sec. 5115, R. S. 1909.] As confirmatory of the disposition of this court to brush aside mere technicalities in the review of criminal cases and to reverse only upon a showing of substantial error, we adhere to the rule heretofore announced in overruling a like contention in State v. Morehead, 271 Mo. 87, in which the identical error now complained of was in question.

II. The first instruction given is assailed on the ground that it refers the jury to the indictment to determine the manner and means of the killing. We discussed a similar objection at some length
**Reference to Indictment.** in State v. Burgess, 193 S. W. (Mo.) 823, and after reviewing this error as presented in former cases, announced the rule that reference in an instruction to an indictment or information would not constitute prejudicial error, unless it left the jury no other alternative than such reference to determine their duty. This was not the case at bar. Other instructions fully supplied whatever was lacking in the instruction complained of. We, therefore, overrule this contention.

III. Instruction numbered two, given by the court, in based on the assumption that there was testimony that another than the defendant had fired the fatal shot, and the jury is told that if they believe
**Aiding and Abetting.** the defendant was present, aiding and abetting, they may find him guilty. The error in the giving of this instruction consisted in the fact that there was no evidence to sustain it. The only inference on which the assumption could be based was that there were other shots fired at about the time the defendant was pursuing and shooting at the deceased; that such other shots were fired at the latter there is no evidence; nor is there any other fact to sustain the assumption that any one was acting in conjunction

278 Mo.—28

State v. Byrd.

with the defendant. There was no authority, therefore, for the hypothesis in the instruction of a common design or a community of purpose as existed in State v. Murray, 193 S. W. (Mo.) l. c. 832, and other cases of like type cited in respondent's brief. While in the abstract, the instruction may not be subject to criticism, it rests upon nothing more substantial than that it may have been possible for the fatal shot to have been fired by another than the defendant. This will not-suffice to sustain a conviction. While it is not to be questioned that proof of an aiding and abetting in the commission of a crime may be shown by circumstantial evidence, none was adduced of sufficient probative force to justify the giving of this instruction.

IV. The remarks of the prosecuting attorney are, in some respects, unnecessarily abusive; and his deduction as to the guilt of the defendant, based upon the assumption of his aiding and abetting **Remarks of Prosecuting Attorney.** in the commission of the crime, was, as we have stated in discussing instruction numbered two, unauthorized. These errors were however, not preserved in such a manner in the record as to entitle them to rulings determinative of this case. Objections were in some instances made to certain remarks of the prosecuting attorney, but upon adverse rulings no exceptions were saved, or requests made that the prosecuting attorney be rebuked. These we have uniformly held to be necessary to entitle a complaint of this character to our consideration. [State v. Shearon, 183 S. W. (Mo.) 293; State v. Baker, 264 Mo. 353.] We advert to the matter only to reaffirm what we have repeatedly said, that conduct of this character on the part of public prosecutors admits of no excuse; and where flagrant and inexcusable, as remarks always are

based on testimony, must, when properly preserved, work reversals always prejudicial to the ultimate enforcement of the criminal law. A vigorous prosecution is not to be condemned, but commended; this does not require that counsel for the State so conduct it that the accused is not afforded a fair trial; this is a duty as incumbent upon the prosecutor as it is upon the court.

V. It is contended that under Section 5231, Revised Statutes 1909, the giving of an instruction upon good character was mandatory, and that the court erred in not so instructing the jury. The language of the statute in this behalf is as follows: . . . "Whether requested or not, the court must instruct the jury Good Character. in writing upon all questions of law which are necessary for their information in giving their verdict; which instructions shall include, whenever necessary, the subjects of good character and reasonable doubt." The words, "whenever necessary," as used in this statute in reference to good character mean that an instruction thereon should be given whenever there is adduced substantial evidence of such character. We so declared in State v. Gartrell, 171 Mo. 519, and State v. Anslinger, 171 Mo. l. c. 606; and the construction of the statute met with our subsequent approval in State v. Cook, 207 S. W. l. c. 833. There was no evidence of defendant's good character sufficient to authorize the giving of the instruction, and the court did not err in this respect.

For the errors noted, this case must be reversed and remanded. It is so ordered. All concur