**Bobby LANE, Respondent-Appellant,**

v.

**STATE of Missouri,
Appellant-Respondent.**

**Nos. WD32226, WD32635.**

Missouri Court of Appeals,
Western District.

Aug. 31, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Oct. 5, 1982.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for appellant-respondent.

Bruce W. Simon, Kansas City, for respondent-appellant.

Before KENNEDY, P.J., and WASSERSTROM and MANFORD, JJ.

WASSERSTROM, Judge.

Lane filed the present proceeding under Rule 27.26 to set aside his conviction and sentence to life imprisonment for first degree murder. The trial court sustained the motion and ordered a new trial. The state appeals from the order to the extent that it granted any relief. Lane appeals on the ground that the order should have granted full discharge rather than merely a new trial.

This case has a long and complex history, involving three trials and two appeals not including the present one. The underlying facts are stated at length in the opinions on the first two appeals, *State v. Lane*, 475 S.W.2d 91 (Mo.1972) and *State v. Lane*, 551 S.W.2d 900 (Mo.App.1977). The facts to the extent here pertinent may be briefly summarized as follows.

On November 26, 1968, Lane and a companion Primous were trying to get into a third floor apartment. The police were summoned, and Officer Mynatt was the first to respond. Upon his arrival, Lane and Primous attacked him, managed to wrest away his service revolver, and tried to escape down the stairs. Before they could get out of the building, they were intercepted by Officers Smith and Yoakum, and a gun fight ensued, during the course of which Yoakum was shot and killed. Expert testimony proved that the fatal shots came from the Mynatt service revolver, but the evidence was conflicting as to whether Lane or Primous had the revolver in hand at the time of the fatal shots.

The first trial of this matter was conducted by Judge Riederer in December 1969 on an indictment alleging conventional murder of Yoakum by Lane. The verdict directing instruction however posed the question to

the jury as to whether Lane had made the fatal assault upon Yoakum "either alone or knowingly acting in concert with others." Pursuant to that instruction, the jury found Lane guilty and sentenced him to life imprisonment.

Lane then filed a motion for new trial in which he set forth 38 assignments of error. On April 15, 1970, Judge Riederer granted a new trial pursuant to the following formal order:

"Now defendant's Motion For New Trial, heretofore filed on the 21st day of January, 1970, is by the Court sustained on points numbered 20 and 29 and overruled as to the balance, except points 28, 31 and 37 which were withdrawn at the time of argument. (See: Judge Riederer's letter—dated, 4-15-70).

"Now it is ordered by the Court that said cause be and is hereby returned to Division No. 15, designated under the rules of Court as Criminal Division 'A'." [1]

The letter by Judge Riederer referred to in the formal order was addressed to the attorneys and advised them of his granting of a new trial on Lane's points 20 and 29. The letter then went on as follows in paragraphs 2 and 3:

"In so doing I have determined that there was no competent substantial evidence of probative value which could have permitted the jury to find that the defendant knowingly acted in concert with others. The facts in this case did not warrant giving of Instruction Number 4 containing the disjunctive language 'either alone or knowingly acting in concert with others'. Therefore, the jury was allowed to find the defendant guilty in a manner not set forth in the indictment, and not supported by the evidence.

"It has long been the rule that when a crime may be committed by any of several methods, the information (or indictment) must charge one or more of the methods, and the method or methods submitted in the verdict directing instruction

1. This formal order was not included in the record on appeal and apparently was not called to the attention of Judge Martin who heard this

27.26 motion. The formal order quoted above was obtained by this court pursuant to its own special request to the Circuit Clerk.

must be among those alleged in the information, and when submitted in the disjunctive each must be supported by evidence. *State v. Shepard,* Mo., 442 S.W.2d 58, 60; see also *State v. Johnson,* Mo., 20 S.W. 302, 304; *State v. Byrd,* Mo., 213 S.W. 35, 37, and *State v. Lusk,* Mo., [452 S.W.2d 219] Number 54,382, Division 2 opinion issued April 13, 1970."

Lane's second trial in this case took place in September 1970 before Judge Stubbs without a jury and again resulted in conviction for conventional first degree murder with punishment affixed at life imprisonment. Lane appealed to the Missouri Supreme Court, which affirmed the conviction. On that appeal, Lane submitted among other contentions an argument that Primous had possession of Mynatt's revolver at all times, that it was Primous not Lane who shot and killed Yoakum, and that there was no evidence that Lane and Primous acted jointly or confederated together nor that Lane knew that Primous intended to shoot Yoakum. The Supreme Court rejected that argument as follows:

"Assuming for the purpose of discussion only, that the facts are as contended by defendant, i.e., that Primous had Mynatt's revolver and shot and killed Officer Yoakum as defendant and Yoakum were fighting, there is still sufficient substantial evidence to sustain a finding that defendant was guilty either as a principal or as an aider and abettor. The trier of facts reasonably could find that the killing of Officer Yoakum during a fight with defendant was a part of one continuous episode and the result of a joint effort and common purpose of defendant and Primous to escape, by use of whatever means necessary, after their joint assault upon and robbery of Officer Mynatt, and defendant's shooting of Fletcher Lewis in the course of their flight down the stairway. *State v. Ramsey,* Mo., 368 S.W.2d 413, 416–418[2–7]; *State v. Irby,* Mo., 423 S.W.2d 800[3, 4]; *State v. Engberg,* Mo., 376 S.W.2d 150, 155–157[2]."

Subsequently, in September of 1973 Judge Stubbs sustained a Rule 27.26 motion filed by Lane and ordered the conviction to be set aside. The ground for that ruling was that the information upon which the second trial had proceeded "was fatally defective for the reason that such information omitted a charge that defendant's alleged conduct was felonious."

Lane's third trial for this same offense occurred in May 1974 before Judge Hall. The information was amended to insert the word "feloniously" but otherwise remained the same as the information at the time of the second trial before Judge Stubbs. The case was submitted to the jury however upon two verdict directors, the first of which (No. 6) premised conviction upon conventional murder. The second instruction, No. 7, apparently submitted in an effort to follow the suggestion contained in the Supreme Court opinion quoted above, was premised upon felony murder and told the jury that if defendant or another caused the death of Yoakum by shooting him and that he did so to promote escape after robbing Mynatt and "that the defendant knowingly and with common purpose acted together with the person who engaged in the conduct submitted in the above paragraphs" then the jury should find defendant guilty of first degree murder. The jury returned a verdict finding Lane guilty under Instruction No. 7. His punishment was again affixed at life imprisonment.

Lane appealed this third conviction to this court. In affirming the conviction, the opinion of this court held:

"The evidence viewed most favorable for the State was clearly sufficient to support a first degree felony murder conviction. Adopting the language of the Supreme Court in *State v. Lane, supra,* we find that, 'The trier of facts reasonably could find that the killing of Officer Yoakum during a fight with defendant was a part of one continuous episode and the result of a joint effort and common purpose of defendant and Primous to escape, by use of whatever means necessary, after their joint assault upon and robbery of Officer Mynatt,' . . . ."

In August 1979, Lane filed his present motion seeking to set aside his third conviction. His theory was that the conviction violated the principle of double jeopardy and the corollary principle of collateral estoppel as announced in *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Hudson v. Louisiana,* 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981) and *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The motion was heard by Judge Martin, who held that the *Burks* doctrine is applicable and that *Burks* should be deemed effective retroactively.

On this appeal the state assumes for the sake of argument that *Burks* operates retroactively, but nevertheless argues that *Burks* is not applicable for the following reasons: (1) Judge Riederer set aside the first conviction because of trial error, not insufficiency of the evidence, and *Burks* does not apply where only trial error is involved; (2) Judge Riederer was plainly wrong, the state had no opportunity to challenge that error by appeal, and those facts distinguish *Burks;* (3) the issue decided by Judge Riederer is different from the issue presented in connection with the third conviction; and (4) the indictment on which the case was tried before Judge Riederer omitted the term "feloniously", just as did the information on which the case was tried before Judge Stubbs, and Judge Riederer therefore was without jurisdiction to enter his order of April 15, 1970.

As does the state, so also we assume that *Burks* has retroactive application. It should be noted, however, that the United States Supreme Court granted certiorari on June 14, 1982, in *Estelle v. Bullard,* —— U.S. ——, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982) to decide this very question. Even making the foregoing assumption, we conclude that the order setting aside the conviction must be reversed because of the state's points 1 and 3. In view of that conclusion, it becomes unnecessary to consider the state's points 2 and 4. Furthermore, because we rule that the 27.26 motion should have been denied, it follows a fortio-

ri that Lane is incorrect in his contention that he should have been granted an absolute discharge under his motion, rather than merely a retrial.

## I.

The keystone of Lane's 27.26 motion is his proposition that Judge Riederer set aside the first conviction and granted a new trial on the ground that the evidence was insufficient to warrant submission to a jury. Unless that be true, this case does not come within the *Burks* principle. The proposition is in fact not true. Rather, the order of April 15, 1970, premised the granting of relief upon the ground of variance between the indictment on the one hand and the instruction and proof on the other hand.

This clearly appears from the face of the order which sustained the motion for new trial "on points numbered 20 and 29." Point 20 read as follows:

"20. Because there is fatal variance between the Indictment and the proof offered by the State, in that the Indictment does not allege the defendant acted in CONSERT [sic] WITH OTHERS and the instructions offered by the State and evidence of the State attempts to but fails to prove beyond a reasonable doubt that Defendant either alone or acting in consert [sic] committed the crime charged."

Point 29 read as follows:

"29. Because the Court erred in giving instruction number 4 offered by the State as to Murder, First Degree, to which defendant objected and excepted, as it is improper, vague, ambiguous, misleading, confusing, misquotes the law, does not properly state the law of the case, and is erroneous in that it charges defendant with ACTING IN CONSERT [sic] WITH OTHERS, in contradiction to the Indictment which charges defendant with acting alone, does not define the term 'consert' [sic] and is therefore fatally defective."

Those points do not by a fair reading attack the conviction on the theory of insuf-

ficient evidence, but rather both refer to the matter of variance. In order to support a conclusion that Judge Riederer was ruling on insufficiency of evidence, Lane and also Judge Martin resort to and lay heavy emphasis upon the language of paragraphs 2 and 3 of Judge Riederer's letter to the attorneys, quoted earlier in this opinion.

■ The legal principle is firmly established that the operative effect of a judgment or order lies in the order or decretal portion itself, rather than in any accompanying recitals, findings, memorandum or opinion. *State ex rel. Lodwick v. Cottey,* 497 S.W.2d 873 (Mo.App.1973) and cases there cited; *Page v. Page,* 516 S.W.2d 537 (Mo.App.1975). In line with that principle, the courts of this state have held repeatedly that the grounds for a motion granting a new trial must be stated in the order granting the new trial and may not be supplied by resorting to any accompanying letter, memorandum or opinion prepared by the trial judge. *Bierman v. Langston,* 304 S.W.2d 865 (Mo.1957); *Hammond v. Crown Coach Co.,* 263 S.W.2d 362 (Mo.1954); *Allen v. Andrews,* 599 S.W.2d 262 (Mo.App.1980); *Ogle v. Todd,* 514 S.W.2d 38 (Mo.App.1974); *State v. Mattingly,* 275 S.W.2d 34 (Mo.App. 1955); *Ponyard v. Drexel,* 205 S.W.2d 267 (Mo.App.1947). As has been frequently stated, the accompanying memorandum cannot be availed of for the purpose of opposing or contradicting what the order of record actually recites, but to the contrary can only be used to support the record entry and to explain that entry if the latter is ambiguous, uncertain or incomplete.

The only basis upon which it could be suggested that the formal order is ambiguous would have to rest upon the extremely narrow basis that point 20 of the motion for new trial contains language that the "evidence of the State attempts to but fails to prove beyond a reasonable doubt that Defendant either alone or acting in consert [sic] committed the crime charged." In view of that language, the state has conceded (perhaps overgenerously) that the order is sufficiently ambiguous to admit consideration of the accompanying letter.

Nevertheless, the state argues and we agree that even considering the order and the letter together, a fair reading of point 20 shows that its full thrust, just as that of point 29, goes to the matter of variance. The reference to evidence was merely an effort to emphasize the difference between the indictment on the one hand and the instruction and proof on the other hand.

Were this interpretation not correct, it would be . impossible to understand what Lane meant by his point number 17 which read: "Because the Court erred in allowing the case to go to the jury when there was no proof that defendant ever had a gun in his hands, shot the deceased, or acted IN CONSERT [sic] or conspired with or planned with OTHERS to kill officer Yoakum." By point 17, Lane attacked the sufficiency of the proof concerning his acting "in concert." By his points 20 and 29, he was devoting himself to something else, namely the different problem of variance. Furthermore, it is only by means of this distinction that we can explain and understand why Judge Riederer overruled point number 17 while at the same time sustaining points 20 and 29.

There is still another concept in this connection for consideration. In the recent opinion in *Tibbs v. Florida,* —— U.S. ——, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), the Supreme Court drew a distinction between the setting aside of a conviction because of insufficiency of the evidence to warrant submission, as against setting aside because of the conviction being against the weight of the evidence. *Tibbs* holds that only in the former instance does the *Burks* doctrine apply. If a trial judge sets aside a jury verdict of conviction on the ground simply that the verdict is against the weight of the evidence, that does not bring double jeopardy into play and a retrial is not barred. *See Hudson v. Louisiana, supra.*

If it could be said that Judge Riederer was acting with respect to the evidence rather than the question of variance as a ground for granting the new trial, then it would seem that he was acting with respect to the weight of the evidence, rather than

with respect to the submissibility. This accords with the position taken by defense counsel in a supplemental brief submitted to this court in which the defense explains its position to be that point 20 "embraced the sufficiency of the evidence to prove beyond a reasonable doubt" and that Judge Riederer's order in this regard related to "the sufficiency of the evidence beyond a reasonable doubt to sustain a conviction on the theory of acting in concert."

█ Under Missouri law, Judge Riederer clearly had the right to act "as a thirteenth juror" and set aside the verdict as being against the weight of the evidence. *State v. Morgan,* 453 S.W.2d 932 (Mo.1970); *State v. Parker,* 543 S.W.2d 236 (Mo.App.1976); *State v. Cochrell,* 492 S.W.2d 22 (Mo.App. 1973). If he had thought that the evidence concerning acting in concert was such as not to warrant submissibility to a jury at all, he would have sustained, rather than overruling, point number 17. By his action in overruling point 17, he demonstrated that he was not ruling with respect to *submissibility,* and *Tibbs* therefore applies.

### II.

Judge Riederer's ruling of April 15, 1970, could only at most bar a retrial of the same issue upon which he undertook to rule. That situation is not true here. The issue determined by the jury in the third trial was a different and distinct one in contrast to the issue concerning which Judge Riederer wrote, even in his separate letter addressed to counsel.

█ The "acting in concert" issue raised by Lane before Judge Riederer and also on both of his previous appeals, related to whether Lane had acted concertedly with Primous in shooting Yoakum. In contrast, the issue necessary to be decided by the jury which convicted Lane in the third trial related to the question of whether he had acted concertedly with Primous in the attack upon Officer Mynatt. That is exactly the issue as framed by the Supreme Court in its opinion on the first appeal, and it was that issue which had to be determined by the jury in the third trial in order to convict under Instruction No. 7.

It is true that Instruction No. 7 did ask the jury to find whether Lane had acted in concert with another in connection with all the events starting with the assault upon Mynatt and continuing through the shooting of Yoakum. However the portion of that instruction which included finding concert of action with respect to the act of shooting Yoakum was unnecessary and should be treated as surplusage. *State v. Blackmon,* 587 S.W.2d 292 (Mo.App.1979); *State v. Adams,* 339 Mo. 926, 98 S.W.2d 632 (1936).

The 27.26 motion should have been overruled, and the order sustaining the 27.26 motion is therefore reversed pursuant to the state's appeal. Lane's appeal is dismissed as moot.

All concur.