STATE of Missouri, Respondent,

v.

Bobby LANE, Appellant.

No. WD 32247.

Missouri Court of Appeals,
Western District.

Nov. 9, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Nov. 30, 1982.

Application to Transfer Denied
Jan. 17, 1983.

inmate at the Missouri State Penitentiary serving a life sentence for first degree murder. Upon a finding that appellant was a second offender under the provisions of § 556.280, RSMo 1969 (now repealed), the court imposed a sentence of five years to run consecutively to his original sentence for the homicide.

In this appeal, Lane poses essentially issues of procedure thus obviating the necessity for a detailed recitation of facts. Suffice it to say evidence was adduced entitling the jury to find that Lane was discovered attempting to conceal contraband on his person. He fled down a hallway and into a restroom where he made an effort to dispose of the substance. With guards in pursuit, Lane used a metal table leg to strike and injure two of the guards.

## I.

In his first point, Lane contends the trial court erred when it imposed sentence upon him as a dangerous offender when the prior conviction on which that determination depended had been set aside. The unusual facts of this case evolved in the following sequence. Lane was first convicted of first degree murder December 6, 1968, but upon his motion, the trial court set aside the conviction and granted Lane a new trial. Upon retrial in July, 1970, Lane was convicted and that judgment was affirmed on appeal. *State v. Lane,* 475 S.W.2d 91 (Mo. 1972). A motion for post-conviction relief under Rule 27.26 followed. For reasons not pertinent to the issues here, the Rule 27.26 motion resulted in an order vacating the 1970 conviction and granting Lane a new trial. A third conviction was had May 23, 1974 when Lane was again tried and that judgment was also affirmed on appeal. *State v. Lane,* 551 S.W.2d 900 (Mo.App. 1977).

When Lane was brought to trial in Cole County in the present case, he then 'had pending in Jackson County a motion to set aside the 1974 conviction for first degree murder. That conviction was relied upon by the state in this case to establish Lane as

William M. Barvick, Jefferson City, for appellant.

John Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and CLARK and MANFORD, JJ.

CLARK, Judge.

Appellant was convicted of the offense of offering violence to a prison guard, an incident which occurred while appellant was an

a second offender.[1] Upon proof of that conviction, the issue of Lane's punishment was not submitted to the jury, which found Lane guilty of offering violence to the prison guard, returning its verdict July 18, 1980. Sentence on that conviction was imposed by the Court October 20, 1980. Five days earlier, however, the circuit court in Jackson County acted on Lane's motion under Rule 27.26 and overturned the 1974 murder conviction.[2]

Based upon the foregoing events, Lane contends he was entitled to have the issue of punishment in this case submitted to the jury with a new trial the only remedy available to correct the error. He relies on the pendency of the Rule 27.26 motion as a procedural step which denied the 1974 murder conviction finality for use in application of the second offender act, citing *State v. Blevins*, 425 S.W.2d 155 (Mo.1968). Of course, the trial court order granting Lane relief before punishment was imposed in this case is also stressed as a further basis for argument that the 1974 conviction could not have supplied the proof required by § 556.280, RSMo 1969.

■ Appellant confuses the qualification which the second offender act places upon prior convictions pending on appeal with the independent remedy available under Rule 27.26. For purposes of the second offender act, a prior conviction is final if the judgment is affirmed on appeal, if the appeal is dismissed or if no appeal is taken.

■ A motion under Rule 27.26 is not an appeal and does not affect the finality of the conviction for this purpose. *State v. Turley*, 452 S.W.2d 65, 71 (Mo.1970). At the time proof of the 1974 conviction was received, that conviction was final, having been affirmed on appeal, and the court properly withdrew consideration of punishment from the jury deliberation.

■ As to the alternative contention that the order of the trial judge setting aside the 1974 conviction had the effect of expunging the prior offense record, and thus precluded imposition of sentence here by the trial judge, that consequence cannot be attributed to the order regardless of the result which occurred on appeal. Prior convictions may be used under the former second offender act, § 556.280(3), RSMo 1969, only when final. The same rule must also apply where, as a result of an action for post-conviction relief, it is contended some change in the prior conviction has been accomplished. At the time Lane was sentenced for the assault, the order setting aside his conviction for murder had not yet become final. That aspect of the case was therefore no more pertinent to the second offender issue than would have been a recently accrued conviction awaiting appeal.

The validity of this proposition is demonstrably sound in this case where, as indicated in footnote two above, the conviction has now been reinstated. Irrespective of the outcome of subsequent appeals and subsequent motions for post-conviction relief, however, the trial court must act in conformity with final dispositions attained at the time and disregard contingencies dependent on proceedings which have not matured. Any other rule, particularly as to post-conviction proceedings in criminal cases, would virtually stalemate the process. At the time when Lane was tried, his 1974 conviction was final and was available for use in the prosecution of Lane as a second offender. In so holding, we express no opinion as to relief Lane would otherwise be entitled to receive were the 1974 conviction to be finally reversed, a fact situation beyond the present case.

---

1. Both Lane and the state assume in their briefs that Lane was sentenced here as a dangerous offender and they cite § 558.016, RSMo 1978. The offense of offering violence to a prison guard was committed October 13, 1978 prior to the effective date, January 1, 1979, of the new criminal code. In fact, the record shows Lane was correctly charged as a second offender pursuant to § 556.280, RSMo 1969 (now repealed). Even though trial was held after January 1, 1979, the prior law controls. *State ex rel. Peach v. Bloom*, 576 S.W.2d 744, 746 (Mo. banc 1979).

2. That decision has since been reversed in *Lane v. State*, 641 S.W.2d 132, 1982 thus reinstating the 1974 conviction for first degree murder.

## II.

In his next point, Lane contends the state's verdict directing instruction was erroneous because it failed to include the qualification that Lane acted unlawfully and feloniously when he struck the prison guard. He also argues that the court erred in failing to give Lane's tendered instruction on self-defense.

The point as to instruction error has not been preserved because Lane made no objection to the state's verdict directing instruction at trial and his motion for new trial makes no complaint on that account nor does it mention the refusal of his instruction. Moreover, appellant's brief is deficient in that the instructions in question do not appear in the argument portion of the brief. Rule 30.06(e); Rule 28.03; *State v. Martin,* 620 S.W.2d 54 (Mo.App.1981). Ex gratia, we consider the points in the interest of final disposition of the case.

Lane appears to contend that use of the words "unlawfully" and "feloniously" was required in the jury instruction because these words were used in the charging instrument and their use is necessary to preclude cases in which a guard is struck by mistake, during recreational activities or while the inmate is defending himself. The statute, § 216.460, RSMo 1978 originating in an enactment of 1955, pronounces it a felony for one or more prisoners to offer violence to any officer, guard or employee of the state division of corrections. The jury instruction given included these elements as well as the details of when, how and upon whom Lane made the assault.

There is no obligation on the state to rebut by its proof or in its instruction the possible but hypothetical situations which Lane poses. The statute designates the prohibited conduct which, by the proscription of the enactment, becomes unlawful and felonious. Such terms are merely descriptive of the nature and grade of the offense, not an element of the crime. *State v. Davis,* 365 S.W.2d 577, 580 (Mo.1963). The instruction given by the state adequately described the elements necessary to convict Lane of the charge.

The instruction Lane tendered advised the jury Lane was entitled to acquittal if his action were the result of "unlawful provocation" by the guard and those acting in concert with him. Lane contends his evidence showed the guards attacked him and that they, not he, were the aggressors in the affray.

Lane fails to recognize the effect of his own testimony on his proffered defense. Lane himself testified that he had not struck any of the guards. He thereby negated any possible claim of provocation because the two claims are irreconcilable. A denial of commission of the offense precludes a submission of justification. *State v. Tompkins,* 632 S.W.2d 50, 52 (Mo.App. 1982).

## III.

In his final point, Lane charges that the trial court was obligated to dismiss the charge because trial was not had within 180 days of arraignment as required by § 545.-780.2, RSMo 1978. The relevant dates in this record are: April 16, 1979—arraignment; July 17, 1980—trial commences.

The threshold obligation of the accused who seeks dismissal of a criminal charge on the ground trial was not had within the time specified in the statute is to show that the delay was occasioned by the state. *State v. Newberry,* 605 S.W.2d 117 (Mo.1980). While Lane contends here that only one continuance, from September 17, 1979 to October 15, 1979, was on his account, the record speaks otherwise.

The initial trial setting for June 20, 1979 was continued to September 17, 1979 for the convenience of the court. On the last mentioned date, 154 days had elapsed since arraignment and trial could have proceeded well within the statutory period. Lane's attorney, however, had filed a motion to withdraw some five days before and the

case was continued on that account until October 15, 1979. Lane then indicated he was dissatisfied with his attorney and needed time and the aid of the court to contact and arrange for testimony of his witnesses. The cause was continued for this reason to January 10, 1980. Thereafter, four additional continuances were obtained by Lane on account of pre-trial motions he filed and his disqualification of the trial judge. Throughout the period from September 17, 1979 to July 17, 1980, all delays of trial was solely attributable to Lane's motions and protestations of his lack of preparedness for trial.

While Lane complains that the trial judge failed to comply with § 545.780.-3(5)(a), RSMo 1978 in that no reasons were set out in the record indicating why the ends of justice were served by the various continuances of the trial setting during the period in question, the actual reasons are abundantly clear from the transcript. Moreover, there was no necessity to explore the basis for the various continuances because they were initiated by Lane's own action. Where a defendant has failed to show that delay of trial for more than 180 days beyond arraignment was occasioned by the state, there is no discretionary decision to be made and no necessity for a statement of reasons arises. *State v. Ratliff,* 633 S.W.2d 267, 270 (Mo.App.1982).

Appellant also raises under point IV of his brief, pro se, twenty-three purported assertions of trial error, all without argument or citation of authority. To the extent necessary, the issues have been considered and are found to be without merit. Rule 29.12(b).

The judgment is affirmed.

MANFORD, J., concurs in majority opinion of CLARK, J.

KENNEDY, P.J., dissents in separate opinion.

KENNEDY, Presiding Judge, dissenting.

There is a certain irony in our treatment of the Speedy Trial Statute.

The foes of "judicial activism" say that the courts should not fashion innovative remedies. Innovation, they say, is for the Legislature, and we should stick to our weighing and our measuring.

The defenders of "judicial activism", on the other hand, say that in some cases needed reforms are not realistically attainable in the legislative arena. In such cases, they say, the courts should launch out from the shore of encrusted precedent and chart new paths.

The irony lies in this: In the case of the Speedy Trial Statute a third position has made its appearance, which neither camp would endorse. That position is that if the Legislature does forge a daring and forward-looking remedy—and an efficacious one, if we allow it—we are to interpret it into a state of ineffectual flaccidity.

The Legislature has placed Excalibur in our hands and we have construed it into a rubber sword.

A remedial statute should not receive such treatment at our hands. It should be construed in such a way as to accomplish its objectives, not to defeat them.[1]

I dissent from the principal opinion for the following reasons:

Underlying the rejection of appellant's speedy trial point is the idea that, if a trial is postponed at defendant's request the state is excused from any responsibility for the delay. The court and the prosecuting attorney were under a duty to bring the defendant to trial within the statutory peri-

---

1. "Remedial statutes, seeking the correction of recognized errors and abuses in introducing some new regulation for the advancement of the public welfare, should be construed with regard to the defects or evils in the former law, sought to be cured by the new law, and the remedy provided. The interpretation should be one which tends to suppress the mischief, de-

feat all evasions for the continuation thereof, and advance or promote the remedy so as to give all parties aggrieved the benefit of the remedy provided. A remedial statute should be construed so as to afford all the relief within the power of the court which the language of the act indicates that the legislature intended to

od.[2] The defendant was under no duty to bring himself to trial; nobody expects him to expedite his trial. He must often be dragged unwillingly to the courtroom. The failure was the omission of a duty of the court and the prosecuting attorney. By the first principles of causation, the failure to bring defendant to trial in the allowed time was occasioned by the state.

In this case the defendant was granted repeated delays for absolutely frivolous reasons.[3] The prosecutor was quiescent, except that he objected to the granting of one continuance January 10, 1980. That continuance was brought about by the prosecuting attorney's failure to make disclosure of an X-ray of defendant which the prosecutor intended to use as evidence. Never did the prosecuting attorney make any attempt to shorten the length of a delay. (We should note here, parenthetically, that a cause which might justify continuance for a week does not justify a continuance for three months. As one of several instances, this case was continued from June 20 to September 17 because of a judicial conference.)

Not a single continuance was justified by the court upon the record, as required by § 545.780.3(5)(a), RSMo 1978. The statute says that continuances not so justified are not excludable. Our recent case of *State v.*

*Reed,* 640 S.W.2d 188 (Mo.App.1982), says that the statute means just that.

My views of the philosophy of this statute are more fully developed in my dissent in *State v. Moore,* 642 S.W.2d 917 (Mo.App. 1982), which follows a much-cited and little-followed *State v. Richmond,* 611 S. W.2d 351 (Mo.App.1980). *Richmond* remains the definitive exposition of this statute.

There is no doubt in my mind that we should dispose of this case as we did the *Richmond* case:

We have concluded that the defendant has met his burden of showing that the delay in the commencement of his trial was occasioned by the state. The trial court has not justified upon the record the continuances or the denial of the dismissal.

The cause is remanded with directions that the court order the dismissal of the case either with prejudice or without prejudice as he may determine in his discretion under Subsection 5 of the statute.

611 S.W.2d at 357.

grant." 73 Am.Jur.2d, Statutes, § 279 (1974). (Footnotes omitted.)

2. *See State v. Reed,* 640 S.W.2d 188 at 191 n. 2 (Mo.App.1982).

3. We quote from the attorney general's brief:
"Appellant was arraigned on April 16, 1979, and his trial was set for June 20, 1979, 66 days later. The trial was continued because of a judicial conference until September 17, 1979, 155 days after arraignment. The record clearly reveals that from that point on every delay was at appellant's demand. On September 17, 1979, appellant requested more time because he needed to find witnesses and could not get along with his attorney. On October 15, 1979, appellant again stated he did not have time to locate witnesses and that he was dissatisfied with his legal counsel and the cause was continued until January 10, 1980. On January 10, 1980, the court was preparing to select a jury when appellant again demanded a continuance to file pretrial motions that appellant

thought were justified. On September 4, 1980 [actual date was Mar. 4, 1980], appellant again asked for a continuance to prepare for trial. On July 10, 1980, appellant asked for a continuance so that the trial would not conflict with a month long religious holiday appellant celebrated. On July 15, 1980, appellant asked for a continuance because he did not like the judge. Finally, the trial was set and heard on July 17, 1980.
"... As the record demonstrates, the trial court went to great lengths to accommodate appellant and afford him the opportunity to present all his evidence."
(References to record omitted.)
In vain do we look for a champion of the public's right to have this defendant speedily tried. Between the defendant's foot-dragging and the prosecutor's and the court's willingness to "accommodate" him, as the attorney general puts it, the public's right to a speedy trial was lost.