Carolina K. Simon, J.
Claimant in this action for damages for false arrest and imprisonment was a resident of Brooklyn at the time the events complained of in this action occurred. He had been licensed in 1949 by the State of New York as an automobile dealer. He also had been licensed by the City of New York in the same year as a second-hand dealer in automobiles. Claimant stated that he had also been engaged in the sale of new and used cars in New Hampshire for a major automobile manufacturer, and that he bought new cars from other dealers and sold and delivered between 252 and 258 cars.
He testified that a strike in a car parts plant in April of 1949 prevented him from making deliveries of the cars he had sold, and that he had turned over to two Brooklyn car dealers the deposits he had accepted from his customers. Claimant stated that complaints were made to the Kings County District Attorney, and that on May 17, 1949 two detectives visited his home during his absence and asked for and received from his wife all his business sales records. No search warrant was shown to her and no receipt was given to her for the material taken.
Mr. Corcoran consulted his attorney and arranged to appear personally with him in the District Attorney’s office. He was arrested there, taken by detectives to Manhattan Police Headquarters to be photographed and fingerprinted, and then taken to the District Attorney’s office in Brooklyn where he was questioned and then remanded to Raymond Street Jail. The next day, May 19, 1949, claimant appeared before a Magistrate and pleaded not guilty. Bail was set at $250,000. Mr. Corcoran was *295 unable to supply such bail, and he remained in Raymond Street Jail for two months. In the intervening period he appeared before a Supreme Court Justice on a writ of habeas corpus, and bail was reduced to $80,000. He was also unable to supply bail in that sum.
Claimant stated that he asked to appear before the Grand Jury but was refused permission to do so by the Assistant District Attorney in charge. He remained in Raymond Street Jail until October, 1949. Meanwhile two indictments for grand larceny, first and second degree, were handed down by the Grand Jury, and Mr. Corcoran was advised by his then attorney to plead guilty to three counts of one indictment in order to avoid a trial and the probability that the adverse newspaper and television publicity, which already had appeared, would result in an excessively severe verdict. He pleaded guilty as advised, and was sentenced to three concurrent terms of 5 to 10 years. He was warned, he testified, that if he went to trial he might get a ‘ ‘ 500 year sentence and never see his family again ”.
On October 20,1949 he was received at Sing Sing Prison where he remained confined until his transfer to Wallkill Prison on March 21, 1950. He remained at the latter institution until December 22, 1952, on which date he was paroled.
Mr. Corcoran testified that he remained on parole until May of 1957. During that time he experienced some difficulty in obtaining employment and keeping a job due to his record, and also because the terms of his parole prevented him from traveling as certain available jobs required. The claimant testified that, while on parole, he requested the Federal Internal Revenue Service to obtain all his books and records held by the Kings County District Attorney’s office and to examine them. He stated that he was advised by the Federal Service after its examination that all the funds he had collected and which were the subject of the complaints were fully accounted for by him, and that he had not retained any of these moneys for his personal use or benefit.
On May 24, 1957, claimant was declared delinquent by New York Parole Board Commissioners as of October 15, 1956. He was sent to Greenhaven Prison as a parole violator where he was held, except for his appearances at hearings.
The Department of Correction in a letter dated February 25,1964 stated that claimant ‘ ‘ was received in Sing Sing Prison on October 20,1949, and transferred to Wallkill Prison on March 21,1950. He was paroled December 22,1952, declared delinquent October 15, 1956, and returned to Sing Sing for violation of parole on May 27, 1957, owing 2 years, 7 months and 18 days *296 delinquent time, expiring on Jan. 15, 1960. According to our records he served the full sentence, which expired on the above date.”
On July 14, 1959, claimant petitioned for a writ of habeas corpus. This writ was issued on July 24 and sustained by a Supreme Court Justice in Dutchess County after a hearing. From the order dated November 25, 1959, sustaining the writ, the following excerpt is quoted: “ and it appearing that the present commitment of the relator from the County Court of Kings County on September 14, 1949 is improper in that the Clerk of that Court failed to comply with the requirement of the Code of Criminal Procedure, Section 480, and a true extract from the minutes of said sentence having been submitted to the Court from which it appears that there was no compliance as aforesaid and after hearing the relator in person ”.
Claimant was remanded to Raymond Street Jail in Brooklyn where he remained until he was released on January 15, 1960, the maximum expiration date of his sentence. Two years later, in the Summer of 1962, a hearing was held before the Kings County Criminal Court Judge who had originally sentenced Mr. Corcoran in 1949.
At the 1962 habeas corpus proceeding, which was combined with a motion for leave to withdraw a guilty plea, claimant’s counsel argued that the sentence should not have been imposed. He made three main points:
1. Claimant had asked to appear before the Grand Jury but was not requested to sign the written waiver of his constitutional rights, nor did he do so.
2. .Claimant pleaded guilty, although the evidence against him was seized in violation of his constitutional rights.
3. The delay in sentencing resulted in a denial of claimant’s right to due process of law.
In his decision, the Criminal Court Judge stated that Mr. Corcoran had been deprived of substantial rights at the original trial, that he had been a first offender with ‘ ‘ a perfect record ’ ’, that he had not personally benefited from the crime, and that he had forfeited substantial benefits accumulated by him during service in the Naval Reserve forces, and that he had completely rehabilitated himself, despite the hardship of a felony conviction. The Judge granted leave to withdraw the plea of guilty and dismissed the indictments in a memorandum decision dated October 18,1963.
Mr. Corcoran sues the State of New York for damages resulting from an illegal arrest, indictments, conviction and sen *297 tencing, and alleges that he was illegally confined for a total period of 10 years and 8 months. He seeks $200,000 for loss of earnings from May, 1949 to November, 1963, $500,000 for loss of reputation, $500,000 for deprivation of civil rights for 14 years, and $500,000 for humiliation and mental anguish resulting from the foregoing,— a total of $1,700,000.
The notice of intention to file a claim was timely filed with the Clerk of the Court of Claims on January 24, 1964 and the claim itself was filed on October 29, 1965. It has neither been tried, brought before any other court or tribunal, nor has it been assigned.
Claimant alleges that the trial court erred in failing to comply with section 480 of the Code of Criminal. Procedure, which provides as follows:
“ Arraignment of defendant for judgment.
“ When the defendant appears for judgment, he must be asked by the clerk whether he have any legal cause to show, why judgment should not be pronounced against him.”
Claimant further alleges that the trial court induced him to plead guilty to three counts of one indictment with the understanding that the other indictment would be dismissed; that this inducement was obtained through coercive threats made to claimant’s then counsel, who conveyed them to claimant, and that claimant was thereby duped and coerced by his then attorney to enter a plea of guilty “ insisted by the Court ”.
Claimant argues that the order dismissing the indictments thereby vacated the judgment of conviction and nullified all proceedings related thereto. He further contends that the court had never acquired jurisdiction over him, and that the State is therefore answerable to him in damages.
In support of this position, Harty v. State of New York (52 Misc 2d 255) is cited. This case, in which the State was held liable for damages for the wrongful detention of Mr. Harty for a period of six years between his plea of guilty and his sentencing, was. an outgrowth of People ex rel. Harty v. Fay (10 N Y 2d 374) in which Judge Desmond stated that an inordinately long' and unexplained delay in imposing a criminal sentence is not only an error, but causes the trial court to lose jurisdiction. In the subsequent damage suit, the court rejected the State’s argument that it was insulated from liability by the sentencing order signed by a Justice of the County Court, and held that the committing court did not have the requisite jurisdiction.
Claimant further contends that the State has waived its immunity from liability (Court of Claims Act, § 8) and is liable for the acts of its officers and employees in their official capacities. In *298 this category he includes the District Attorney and Parole Officer.
As to the measure of damages, claimant compares and likens his situation to the facts in Campbell v. State of New York (186 Misc. 586) in which there was an erroneous conviction and sentencing of Mr. Campbell for more than seven years on a charge of forgery, to which another man confessed and for which a special act of the Legislature was passed to enable Mr. Campbell to recover damages.
Though a special statute was enacted and claimant was proven innocent and pardoned in Campbell v. State of New York (supra) the situation is not so dissimilar from the instant facts as the State would wish it to be considered. One of the purposes of the Court of Claims Act, under which the instant claim is brought, is to obviate the need for frequent special legislative acts to redress wrongs and to make whole those damaged by the State through court machinery established for that purpose by the Legislature.
The Judge before whom this claimant was tried, later dismissed the indictment on his own motion. Therefore, no conviction should rest on the no longer existing indictment. Claimant's situation therefore comes within the rule of the Campbell decision {supra). In the instant matter though claimant’s innocence never was adjudicated, his commitment was found to be improper by a Supreme Court Justice.
The Attorney-General argues that the State is not liable, since the committing court had jurisdiction and the order of commitment was valid on its face. The court recognizes that it is settled law that the State cannot be held liable for the errors of a judicial officer on the theory of respondeat superior or otherwise. (Koeppe v. City of Hudson, 276 App. Div. 443; Newiadony v. State of New York, 276 App. Div. 59.)
The court recognizes the soundness of purpose in such a rule. Recently, it was stated by the United States Court of Appeals, in Fanale v. Sheehy (385 F. 2d 866, 868): “ The immunity rule is designed to promote ' principled and fearless decision-making' by removing a judge’s ‘ fear that unsatisfied litigants may hound him with litigation charging malice or corruption. ’ Pierson v. Ray, 386 U. S. [547] at 554. To accomplish this purpose exceptions must be confined to situations in which it is perfectly clear that the court acted wholly without jurisdiction.”
The State further argues that it is liable only for the acts of State officials, and that this category does not include a New York City policeman (citing City of Albany v. Standard Acc. Ins. Co., 7 N Y 2d 422), nor a Kings County District Attorney
*299 (citing Fisher v. State of New York, 10 N Y 2d 60; Hicks v. State of New York, 22 A D 2d 837), nor a County Judge (citing Jameison v. State of New York, 7 A D 2d 944), nor is it liable for tbe acts of the Department of Correction (citing Noyse v. State of New York, 15 Misc 2d 1018).
The City of Albany situation involved the tortious act of a policeman driving a police car resulting in a collision causing the death of his passenger, another policeman. The interpretation of the city’s automobile liability insurance policy was the crux of the issue, and the law there stated is not related to the facts in the instant matter.
The Fisher citation reports a casé in which the presentation by an Assistant District Attorney of false information to a Grand Jury was used as the basis for the State being sued on the theory of respondeat superior. The Hicks citation involved errors in the nature and degree of crimes charged in an information, in which alleged felonies were found to be only misdemeanors.
The Noyse citation concerns the transfer of a prisoner from a reformatory, where he was serving a maximum five-year sentence, to a State prison where the maximum sentence for the same crime was only two and one-half years. After he was resentenced to the time served and then set free, his suit against the State for excessive detention was dismissed, the court holding that no liability could be found against the State, either on the basis of any act of the Department of Correction or an alleged error of the sentencing court. This set of facts differs from those in the instant case, since in the Noyse (p. 1019) claim the court found that the claimant could have been legally in Elmira for five years and that “ the decree was valid on its face and hence no liability can be found against the State of New York because of any act of the Department of Correction.”
The legal situation when such a mistake occurs is precisely summarized in the decision in People v. Harrington (21 N Y 2d 61, 64) where the Court of Appeals states: " The defects above described affect the correctness of the sentence itself. They are an integral part of the sentencing process, with the consequence that the sentence which purports to have been imposed is a nullity that has to be superseded by a new sentence which (whether more or less severe) shall have been determined by the court in conformity with the law and as the result of an informed judgment after the defendant has had the opportunity to be heard which the law allows (Code Grim. Pro., § 480) and where the record shows that all relevant factors have been taken into consideration.”
*300 In the instant matter a question at issue is whether a cause of action arises from Mr. Justice Brennan’s order sustaining the writ of habeas corpus and finding that the original commitment of the relator was improper because of his failure to comply wi,th section 480 of the Code of Criminal Procedure. Claimant was not brought back to court for resentencing to cure what the Supreme Court Justice found to have been an invalid sentencing.
The courts have held that failure to comply with section 480 does not affect the validity of judgment of conviction but only the validity of sentence. (People v. Freccia, 27 Misc 2d 994, affd. 18 A D 2d 1139.) This court therefore can only consider whether the sentence was valid. On all the facts before it, the court finds that.it was not valid. The court finds that the State is liable in damages for the invalid sentence and the 10 years and 8 months served as a result of it, and the damages flowing from such service.
Mr. Corcoran stated that he had earned about $5,000 during the year prior to his arrest in 1949, that he had contracted to deliver 600 cars, of which 258 had been delivered, and that he estimated he could have sold about 10 cars a week during the time he was in jail, at an average profit to him of $150 per car, or a gross income of about $75,000 a year.
He stated that he had earned a few hundred dollars while in prison, and that during his parole he was employed in the aviation and construction industries, and that his total earnings during the 10-year period amounted to slightly more than $20,000.
The claimant’s conviction had many grievous effects upon claimant, his wife and family. Among them, was that after long military service, he was given a dishonorable discharge because of the conviction, and suffered not only that disgrace but also ‘* forfeited very substantial benefits accumulated by him in long service with the Naval Reserve forces ”.
The court finds the arrest was based on a charge valid on its face and therefore dismisses the claim for damages flowing from the arrest.
The finding that claimant’s parole was violated was a quasi-judicial finding. The court cannot review it if there was valid jurisdiction. Here the sentence was found to be invalid. Since parole relates to sentence it cannot stand as valid if the sentence was invalid. Therefore, a violation of an invalid parole cannot be sound basis for returning claimant to jail.
This court does not have before it the question of whether claimant was innocent or guilty of the charges against him. It does not have before it the question of whether there was jurisdiction warranting the conviction.
*301 The court awards the sum of $60,000 to claimant for all damages resulting to him from the invalid sentence and the invalid parole and all results thereof, including the dishonorable discharge.
Motions made to dismiss at the end of claimant’s proof, on which decision was reserved, are now denied. Motions made to dismiss at the end of the trial are granted as to the issue of false arrest, and denied on all other issues.