# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 16, 2001

## DEBORAH LOUISE REESE v. STATE OF TENNESSEE

**Appeal as of Right from the Circuit Court for Rutherford County**
**No. 48592     J. S. Daniel, Judge**

---

**No. M2000-02553-CCA-R3-PC - Filed August 30, 2001**

---

The petitioner, Deborah Louise Reese, pled guilty in the Rutherford County Circuit Court to one count of felony murder, one count of especially aggravated robbery, and one count of conspiracy to commit especially aggravated robbery. The trial court sentenced the petitioner to a total effective sentence of life imprisonment. Thereafter, the petitioner filed a petition for post-conviction relief alleging that she received ineffective assistance of counsel and that her guilty pleas were neither voluntarily nor knowingly made. Following an evidentiary hearing, the post-conviction court dismissed the petition. The petitioner now appeals this ruling. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Dicken E. Kidwell, Murfreesboro, Tennessee, for the appellant, Deborah Louise Reese.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and J. Paul Newman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

On February 23, 1999, the petitioner pled guilty to the felony murder of Donald Greenwood, the especially aggravated robbery of Greenwood, and conspiracy to commit the especially aggravated robbery of Greenwood. The record indicates that the petitioner and her co-defendant, Kenneth Paul Dykas, went to the victim's residence at the Jackson Motel in Murfreesboro with the intention of stealing the victim's gun. To effect the robbery, Dykas beat the victim in the head with a hammer. When the victim was dead, Dykas instructed the petitioner to remove money from the victim's wallet. The petitioner did so and later went with Dykas to purchase beer and

cigarettes with the victim's money. Subsequent to an investigation, police determined that the petitioner and Dykas were involved in the robbery and murder of Greenwood. The petitioner was charged with first degree premeditated murder, first degree felony murder, especially aggravated robbery, and conspiracy to commit especially aggravated robbery.

Gerald L. Melton, the district public defender, was appointed to represent the petitioner. Over the course of a year, counsel investigated the case and discussed the case with the petitioner. On February 2, 1999, the State offered to allow the petitioner to plead guilty to felony murder, with a sentence of life imprisonment in the Tennessee Department of Correction; especially aggravated robbery, with a sentence of fifteen years incarceration; and conspiracy to commit especially aggravated robbery, with a sentence of eight years incarceration. The plea offer also provided that the petitioner's sentences should be served concurrently. On February 23, 1999, the petitioner accepted the foregoing offer and pled guilty to the three named offenses.

Subsequently, the petitioner filed a petition for post-conviction relief alleging that she had received the ineffective assistance of trial counsel, contending that he infrequently met with her and he insufficiently explained the proceedings. Additionally, the petitioner alleged that her guilty pleas were not voluntary or knowing because counsel advised her that if she did not plead guilty she would receive the death penalty for the murder. She also alleged that she was taking psychotropic drugs at the time of the guilty pleas which affected her judgment. Following an evidentiary hearing, the post-conviction court dismissed the petition, finding that the petitioner had not met her burden of proof. It is from this determination that the petitioner now appeals.

## II. Analysis

Because this post-conviction petition was filed after May 10, 1995, the petitioner must prove all factual allegations contained in the petition by clear and convincing evidence in order to obtain relief. Tenn. Code Ann. § 40-30-210(f) (1997). In other words, the petitioner must demonstrate that there is "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992); see also State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999), perm. to appeal denied, (Tenn. 2000). The post-conviction court bears the responsibility of resolving all issues regarding the credibility of witnesses, the weight and value to be accorded the testimony of those witnesses, and the factual questions raised by the evidence. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Accordingly, on appeal,

> the findings of the [post-conviction] court, upon questions of fact, are conclusive unless this Court finds that the evidence preponderates against the lower court's judgment. . . . [Furthermore,] the findings of a [post-conviction] judge in an oral hearing, who sees and hears the witnesses testify, and hears and considers conflicting testimony, will be given the weight of a jury verdict.

Bratton v. State, 477 S.W.2d 754, 756 (Tenn. Crim. App. 1971) (citations omitted).

A. Ineffective Assistance of Counsel

It is well-established that a claim of ineffective assistance of counsel is a mixed question of law and fact. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). In this regard, our supreme court has recently stated that, in cases of ineffective assistance of counsel, a post-conviction court's findings of fact are reviewed de novo with a presumption of correctness, while the post-conviction court's conclusions of law are reviewed purely de novo. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

> This court has previously observed that
> "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)); see also Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). If the petitioner fails to prove even one of the above elements, then the petitioner has failed to meet her burden of proving the ineffective assistance of counsel. See Burns, 6 S.W.3d at 461.

In the instant case, the petitioner testified that she only met with trial counsel three or four times during the year that he represented her. Additionally, the petitioner contended that counsel never shared discovery with her, nor did he explain the purpose of any of the motions he filed. The petitioner also alleged that counsel coerced her into pleading guilty by telling her that she would receive the death penalty if she went to trial and was convicted.

In direct contrast with the petitioner's testimony, trial counsel testified that he met with the petitioner seven or eight times, and that other members of the public defender's staff met with the petitioner on at least two or three occasions. Counsel maintained that not only did he share discovery with the petitioner, he also spent a considerable amount of time reviewing the discovery materials with her. Counsel averred that, prior to a hearing on any motions, he always explained the motions to the petitioner. Finally, counsel asserted that, after January 12, 1999, when the State informed counsel that the maximum sentence the State intended to seek was life imprisonment without the possibility of parole, he shared this information with the petitioner and also advised her of the additional risk of receiving consecutive sentencing for any other convictions.

In essence, the outcome of the petitioner's post-conviction hearing depended upon the credibility of the witnesses. Because the petitioner repeatedly conceded at the post-conviction hearing that she had often lied during the guilty plea hearing, the post-conviction court determined

that the petitioner was not a credible witness.  See Rhoden 816 S.W.2d at 69.  Therefore, the post-conviction court accredited the testimony of trial counsel and dismissed the petition.  As we stated earlier:

> The findings of fact of the [post-conviction] judge on a petition for post[-]conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence in the record preponderates against those findings. . . . [Additionally,] [a]ppellate courts in this State do not reweigh or reevaluate the evidence.

Henley, 960 S.W.2d at 578-579 (citations omitted).  In the instant case, there is nothing in the record to preponderate against the conclusion of the post-conviction court that the petitioner did not meet her burden of proving that she received the ineffective assistance of counsel.  This issue is without merit.

### B.  Guilty Pleas

The petitioner also complains that her guilty pleas were neither voluntary nor knowing because her trial counsel coerced her into pleading guilty by telling her that she would receive the death penalty for the felony murder offense if she went to trial and was convicted.  Additionally, the petitioner maintains that "she was under the influence of medicines which prevented her plea from being voluntary."

> Our supreme court has previously noted that
> "[a] court charged with determining whether [guilty] pleas were 'voluntary' and 'intelligent' must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of [her] familiarity with criminal proceedings; whether [she] was represented by competent counsel and had the opportunity to confer with counsel about the options available to [her]; the extent of advice from counsel and the court concerning the charges against [her]; and the reasons for [her] decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial."

Wallen v. State, 863 S.W.2d 34, 38 (Tenn. 1993) (quoting Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993)).

Notably, at the post-conviction hearing, the petitioner testified that she attended high school through the eleventh grade and has no problem reading and writing.  She admitted that she signed the guilty plea agreement but contended that she did not read the document; she merely "looked over it."  However, trial counsel testified that he would have carefully explained the guilty plea document to the petitioner prior to her signing it.  Specifically, counsel testified that, "I don't recall that we sat there and read the form. [The petitioner] had it with the ability to read it as I summarized it and led her through it."  Moreover, we observe that counsel testified that he thoroughly reviewed all aspects of the case with the petitioner on numerous occasions throughout the course of his representation. Additionally, the record reveals that, at the guilty plea hearing, both

the trial court and petitioner's counsel extensively discussed the petitioner's rights with her and, thereafter, the petitioner asserted that she wanted to plead guilty.

At the guilty plea hearing, the petitioner testified that her attorney had thoroughly investigated her case and had sufficiently discussed the petitioner's rights with her. Additionally, the petitioner testified that no one scared her or forced her into pleading guilty and, therefore, maintained that her guilty pleas were freely and voluntarily entered. See Gary Carr v. State, No. W1999-01242-CCA-R3-CD, 2000 WL 763962, at **4-5 (Tenn. Crim. App. at Jackson, June 8, 2000), perm. to appeal denied, (Tenn. 2001). Again, we note that trial counsel testified at the post-conviction hearing that

> [f]rom January the 12th of 1999, which is the date that [the State] advised me that it would be a life without parole case, . . . I would never have again mentioned to [the petitioner] any possibility of the death penalty because there was not a possibility of the death penalty after that date.

As we previously mentioned, due to the petitioner's poor credibility, the post-conviction court accredited counsel's testimony and found that the petitioner had not been incorrectly advised as to the possible punishment for the felony murder offense. See Tracy Davidson v. State, No. W1999-00080-CCA-R3-PC, 2000 WL 674697, at *4 (Tenn. Crim. App. at Jackson, May 16, 2000), perm. to appeal denied, (Tenn. 2000); Elbert Tate v. State, No. 02C01-9810-CR-00304, 1999 WL 608703, at *3 (Tenn. Crim. App. at Jackson, August 12, 1999).

Finally, the petitioner claims that she was taking the prescription medications "Halydon, Cogentin, and Vistaril" at the time of the guilty plea hearing and that these drugs affected her ability to comprehend her guilty pleas. Specifically, the petitioner testified that

> I hear voices, and sometimes they're telling me to say things or do things that aren't correct, or maybe they're not correct, and I'll do them anyway. It's a lot of mental things that goes on in my head that makes the medicine necessary.
> . . . .
> Now [that the medication has been changed] I can sit and talk with you and usually understand. Before, with those medications, it was like I would just sit, like I was a zombie, and anything could be going on around me, and . . . I wouldn't know anything about it.

Petitioner's trial counsel testified, however, that the petitioner always seemed alert and able to understand the proceedings. Additionally, counsel testified that, prior to the guilty plea hearing, the petitioner had been evaluated by mental health experts who were informed about the petitioner's medications and nevertheless found her competent to stand trial. Moreover, the petitioner's own testimony at the guilty plea hearing contradicts her current allegation. Specifically, the following colloquy occurred between the petitioner and the trial court at the guilty plea hearing:

> Q: Today are you under the influence of any drugs--
> A: No.

Q: --alcohol, or anything that would impair your ability to understand clearly what you're doing?
A: No.
Q: Are you under the care of any mental health provider or anything else that would prevent you from fully understanding and appreciating the gravity of what you're doing?
A: I don't think so.
Q: Well, either you are or you aren't.
A: I'm not.

The post-conviction court was entitled to accredit the petitioner's testimony at the guilty plea hearing as well as the testimony of trial counsel at the post-conviction hearing. See Carr, No. W1999-01242-CCA-R3-CD, 2000 WL 763962, at **4-5. This issue is likewise without merit.

### III. Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE