IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 15, 2020 Session

## STATE OF TENNESSEE v. IDA VERONICA THOMAS

**Appeal from the Criminal Court for Davidson County**
**No. 2019-B-1278    Angelita Blackshear Dalton, Judge**

_____

### No. M2019-02137-CCA-R3-CD
_____

The Defendant, Ida Veronica Thomas, pleaded guilty to theft of property valued at $60,000 or more, but less than $250,000. Pursuant to a plea agreement, the trial court ordered the Defendant to serve twelve years on community corrections and scheduled a subsequent restitution hearing. At the restitution hearing, the trial court ordered restitution in the amount of $151,385 to be paid at a rate of $75 per month. On appeal, among other issues, the Petitioner challenges the trial court's payment schedule for the restitution, $151,285 at $75 per month for twelve years, which cannot be completed during the length of the Defendant's sentence. The State concedes this is error and agrees that a remand is the appropriate remedy as to this issue. After reviewing the record, we conclude that restitution is appropriate in this case, but we remand for the trial court: (1) to order a presentence report as required by statute in restitution cases; and (2) to consider the Defendant's financial resources, future ability to pay, and length of her community corrections sentence as it relates to a payment schedule for restitution.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which TIMOTHY L. EASTER, J., joined. THOMAS T. WOODALL, J., not participating.

Martesha L. Johnson, Public Defender, Jeffrey A. DeVasher (on appeal), Assistant Public Defender, and Annie Berry (at hearings), Assistant Public Defender, Nashville, Tennessee, for the appellant, Ida Veronica Thomas.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Brittani Flatt, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
## I. Facts

A Davidson County grand jury indicted the Defendant for financial exploitation of an elderly adult (Count 1) and theft of property valued at $60,000 or more but less than $250,000 (Count 2). The indictment was based upon evidence that the Defendant, one of the victim's caretakers, stole jewelry stored in the victim's room. At a subsequent guilty plea submission hearing, by agreement of the parties, the Defendant pleaded guilty to theft of property valued at $60,000 or more, a Class B felony, to serve a twelve year Tennessee Department of Correction sentence, suspended to community corrections. The Defendant agreed to be placed on the Adult Abuse Registry and the Defendant agreed not to contact the victim or his family. The agreement also provided that Count 1 of the indictment would be dismissed, and the trial court would determine the amount of restitution.

As a basis for the trial court's acceptance of the Defendant's guilty plea, the State provided the following recitation of the facts:

> [H]ad the State proceeded to trial the testimony would show that on August 9, 2018 officers were dispatched to [a residence in Nashville] for a stolen jewelry report. When officers arrived they met with the victim[ ]'s daughter-in-law Jean Ownbey. Jean stated that she had been contacted by one of [the victim]'s caretakers who worked with Senior Helpers stating that there had been some suspicious circumstances regarding large amounts of jewelry missing from his room. Mrs. Ownbey stated that the caretaker noted that the jewelry was in [the victim]'s drawer from 7-9-2018 and on 7-10-2018 when she was relieved by another caretaker. On 7-12-2018 the original caretaker returned and noticed the jewelry was missing. Mrs. Ownbey stated that the police were not called right away due to [the victim] suffering from dementia and the caretakers reached out to the family first.

> Mrs. Ownbey stated that 38 pieces of jewelry were missing and are valued at over $243,000. Mrs. Ownbey also stated that there were only two caretakers that had access to the home and there were no signs of force or unauthorized entry. It was discovered the [D]efendant, Ida Thomas, who was [the victim]'s second caregiver and employee of Senior Helpers was in [the victim]'s room during the dates and times that the jewelry had come up missing. On September 22, 2018 [the Defendant] pawned a bracelet and a ring at Barry's Pawn Shop located at 513 South Gallatin Pike. On October

- 2 -

11, 2018 the [D]efendant pawned another bracelet at the same pawn shop. All three pieces of jewelry were shown to the family and were confirmed to be pieces that were stolen. The recovered jewelry was turned into the Metro Nashville Police Department property room. Based on the above facts the State recommends the following announced agreement.

Following the State's recitation of the facts, the Defendant agreed that these facts were true. She then waived her rights and entered a plea of guilty to theft of property valued at $60,000 or more.

*Restitution Hearing*

The parties stipulated that the Defendant, through her attorney, turned over to the State two of the stolen items, rings, valued "to be somewhere around $35,000." The trial court stated that, because the items were returned to the victim's family, it would not consider the value of those two rings for purposes of restitution.

Jean Ownbey, the victim's daughter-in-law, testified that Seniors First was the company employed to provide caregivers for the victim. A Senior Helpers employee notified Mrs. Ownbey's husband that one of the caregivers had reported a necklace was missing. Consequently, Mrs. Ownbey[1] traveled to Tennessee to further investigate. Mrs. Ownbey spent two days taking inventory of all of the items in the victim's apartment to determine what had been missing. When she found all of the jewelry missing, she contacted the insurance company to obtain the insurance policy that contained information on the pieces that were insured. Mrs. Ownbey notified the police and then began "working [her] way" through the list of insured pieces and contacting family members who had knowledge of the jewelry. Mrs. Ownbey identified a list of stolen items that she had provided to the State.

The list Mrs. Ownbey created is included in the record and the list contains a total of forty-three items: (1) thirty-eight items, each valued by the insurance company; (2) three pieces of uninsured jewelry with estimated values; and (3) two uninsured jewelry items that were recovered and identified by the family. Mrs. Ownbey confirmed that, during the course of the police investigation, a detective notified her of items recovered from a pawn shop. She identified the three pieces of jewelry recovered from the pawn shop based upon the list she provided to the State: (1) a 14K yellow gold bracelet valued by the insurance company at $5,999, (2) a white gold 3-diamond ring totaling

---

[1] When the Ownbeys learned of the theft they lived in New Jersey; however by the time of the restitution hearing, they lived in Indiana.

approximately five to seven carats with an estimated value of $20,000, and (3) an 18K yellow gold bracelet with an estimated value of $2,000.

Mrs. Ownbey testified that she was present when the Defendant, through her attorney, provided the State with two stolen rings. One of the rings had three, equal-sized, one to two carat diamonds with an estimated value of $20,000. Mrs. Ownbey explained that this ring was not insured, so she based her estimate on a similar ring that she owned and had appraised fourteen years prior. Her ring had fewer diamonds and was appraised at $27,000 so she conservatively estimated the stolen ring at $20,000. The other was an 18K gold ring set with a large aquamarine stone and six surrounding diamonds valued by the insurance company at $14,616. Mrs. Ownbey confirmed that, in total, five of the stolen items listed had been returned or recovered.

Mrs. Ownbey testified that the values listed for each of the first thirty-eight items on the list were based upon the insurance policy appraisal of the jewelry. She believed these estimates were conservative because the items were appraised in the 1980s. For the remaining items that were not included on the policy she estimated values conservatively based upon the value of similar pieces she owned. Mrs. Ownbey filed a claim for the stolen jewelry with the insurance company. After the victim paid the $1,000 deductible, the insurance company issued a total payout of $61,143 for the loss of the stolen items. Through restitution, Mrs. Ownbey was seeking the balance of the value of the stolen items less the value of the recovered items and the payment from the insurance company.

On cross-examination, Mrs. Ownbey explained that the insurance policy required that some of the pieces of jewelry be kept in a vault when not worn. Some of the jewelry items did not qualify for insurance coverage because they were not stored in the vault per the policy. Mrs. Ownbey agreed that she was not employed as a "jewelry estimator." She confirmed her understanding of the recovery of three of the stolen items from a pawn shop but indicated that the items had not yet been returned to the victim. Mrs. Ownbey testified that her in-laws moved into the apartment where the victim now resided in 2004 or 2005. Her mother-in-law died in 2016, and the victim still lived in the apartment. During the time her mother-in-law was living in the apartment, Mrs. Ownbey observed her mother-in-law wearing the items that were now stolen. After her mother-in-law's death, the victim left all of his wife's belongings where she had kept them.

The Defendant testified that she was unemployed. She was last employed three months ago and quit that job at the instruction of a community corrections officer because the job was located in a different county. The Defendant had recently enrolled in an eighteen-month program to learn about central air and heating and refrigeration. The Defendant was unaware of the income for this type of employment but had "heard other people say it's a good living." The Defendant had no income at the time of the hearing

but did not have any expenses. She explained that her fiancée, her mother, and her younger sister financially supported her.

The Defendant testified that at the time of the theft she worked for Senior Helpers part-time. She admitted to taking items from the victim, but asserted that she only took five pieces of jewelry. She explained, "I had [the jewelry], but I left them there and then I panicked and I moved them and I wanted to put them back but I couldn't." She stated that the police had never searched her car or home. She pawned three pieces of jewelry and returned two rings through her attorney. She said that the jewelry she took had been stored in a beige sock "in a large chifferobe." She stated that she never saw any other pieces of jewelry in the victim's apartment.

The Defendant explained that she returned the two rings because she felt guilty and "knew better." The Defendant wanted to return the jewelry to the chifferobe, but the "upper management team" was in the apartment "searching," so she could not return the items unnoticed. When she arrived home after work, she felt "really bad," so she took three pieces of the jewelry to a pawn shop. About the initial report of a missing necklace, the Defendant stated that she had never seen a necklace in the apartment and had "never even heard of a necklace."

On cross-examination, the Defendant confirmed that she did not bring any documentation of her financial accounts to court. She stated, "I don't have any money." She stated that she lived in her fiancée's home and that he paid all the bills. Her fiancée, her mother, and her younger sister paid for her cell phone, and she drove her fiancée's car to school. Her education was free through Connect Tennessee. The Defendant agreed that she had received a list of employers who hire employees with felony convictions. She said that she sent out twelve resumes "through Indeed" and had an interview on Saturday morning with FedEx. She then stated that she would not get the job she was interviewing for based upon the theft conviction. The Defendant denied that she returned the two rings because she was required to do so pursuant to the plea agreement. She stated, "I would have gave them back to them regardless."

Following this evidence, the trial court made the following findings:

Well, let me say this: I agree with [defense counsel] that any loss of the jewelry that has obviously been in the Ownbey family for a significant period of time, and I think as even [as defense counsel] indicated is likely considered heirlooms, I can't imagine the disappointment to the family experiencing such loss.

[The Defendant] pled guilty to theft and [defense counsel]'s contention is that she only pled to the three items that were either returned or had the potential of being returned because they were pawned and they are in the possession of the pawn shop. I am assuming that is where they are.

Mrs. Ownbey has presented a pretty lengthy list and I looked through the discovery that list was also included in discovery of what the State was presenting as the items that were stolen and so the Court takes all of that into consideration.

After the calculations the Court does determine that [the victim] is entitled to one hundred and fifty-one [thousand] dollars and three hundred and eight-five cents [sic]. Now, the question then becomes the ability to pay and I get that and I understand that that is what the Courts have to determine.

One thing that neither party pointed out in your argument which this Court really takes it into consideration and I applaud [the Defendant] and she testified that she went back to school with hopes of getting employment and while she said that she doesn't know exactly what the pay would be she understands that those in that industry are paid quite well, so is there an eventual opportunity for her to pay towards this restitution? Absolutely.

I am going to order the amount of $151,385. I am going to right now set monthly payments at $75. $75 per month, but with the understanding that this has to be revisited. I am going to revisit this in one year, look at it and see what her financial situation is, so any adjustments at that point can be made.

She's in, she is going into an industry central air and heating that could potentially pay, you know, while it is not a financial landfall, I mean, I think that she could potentially earn a living that could assist in offsetting what is owed to [the victim] and that is the judgment of the Court.

It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant asserts that the trial court improperly ordered her to pay restitution beyond the five pieces she admitted to stealing, ordered an excessive

restitution amount that cannot be satisfied during the length of her sentence, and failed to order a presentence report as required by Tennessee Code Annotated section 40-35-304(b). The State maintains that the Defendant pleaded guilty to the thirty-eight pieces announced in the plea agreement but concedes that the restitution amount was not correctly calculated and a presentence report was not prepared and filed as required by statute.

## A. Restitution

Preliminarily, we address the scope of the restitution amount to determine whether any restitution should have been ordered in this case. The Defendant contends that the order of restitution was improper because she stole only five pieces of jewelry – the three items recovered from the pawnshop and the two pieces she returned to the State. The Defendant asserts that because all five of these pieces were returned, no restitution should be ordered. The State responds that the Defendant has failed to show any provision limiting the crime to only five items in the plea agreement or at the plea hearing.

In Tennessee, the voluntary entry of an informed and counseled guilty plea constitutes an admission of all facts necessary to convict and waives all non-jurisdictional defects and constitutional irregularities which may have existed prior to the entry of the guilty plea. *See Hicks v. State*, 945 S.W.2d 706, 709 (Tenn.1997); *Wallen v. State*, 863 S.W.2d 34, 38–39 (Tenn.1993). In our review of the record, we have been unable to find any jurisdictional irregularity or defect in the proceedings leading to the entry of the guilty plea. We note that the Defendant does not claim that her guilty plea was involuntary nor does she seek to set it aside.

The cases of *Boykin v. Alabama* and *State v. Mackey* are the landmark constitutional cases for analyses of guilty pleas. *Boykin v. Alabama*, 395 U.S. 238 (1969) (federal standard); *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977) (state standard). In *Boykin*, the United States Supreme Court held that before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily. *Id*. at 242. In order to find that the plea was entered "intelligently" or "voluntarily," the court must "canvass[ ] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences." *Id*. at 244.

In this case, the State recited the facts supporting entry of the Defendant's guilty plea. These facts included thirty-eight pieces of jewelry that exceeded $243,000 in value. There were only two caretakers who had access to the victim's residence, one of whom was the Defendant, and the jewelry disappeared from the residence during the period of time that the Defendant was present in the home. Following the State's recitation, the Defendant agreed with the facts presented. The trial court advised the Defendant of her rights, and the Defendant identified the plea agreement and affirmed her understanding of

the agreement that included a restitution hearing. The Defendant entered her plea of guilty, and the trial court scheduled a restitution hearing as provided in the plea agreement. Nothing in the record indicates that the items for which the Defendant was pleading guilty were limited to five items contrary to the State's announcement that thirty-eight pieces of jewelry valued at over $243,000 were stolen.

Accordingly, we conclude that the Defendant, with full knowledge of her rights, voluntarily accepted the plea bargain. By accepting it, she waived her right to contest any non-jurisdictional defect in the sentencing process.

### B. Restitution Amount

Although the trial court properly found that restitution should be a condition of the plea agreement, we now consider whether the trial court properly determined a restitution amount. The Defendant contends that the trial court erred by failing to consider her financial resources and future ability to pay when ordering a restitution amount of $151,385 to be paid at the rate of $75 a month. The State concedes that the case should be remanded for the trial court to make findings on: the issue of the victim's pecuniary loss; the Defendant's financial resources; the Defendant's present and future ability to pay; and a restitution amount that can be paid during the sentencing period. We agree.

When a defendant challenges the restitution amount ordered by the trial court, this Court will utilize an abuse of discretion standard of review with a presumption that the trial court's ruling was reasonable. *See State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012); *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012); *see also State v. David Allen Bohanon*, No. M2012-02366-CCA-R3-CD, 2013 WL 5777254, at *4 (Tenn. Crim. App., at Nashville, Oct. 25, 2013), *no Tenn. R. App. 11 application filed* (concluding that "the appropriate standard of review for restitution orders is the abuse of discretion standard with a presumption of reasonableness"). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). Furthermore, the defendant bears the burden of demonstrating the impropriety of the sentence. *See* T.C.A. § 40-35-401 (2019), *Sentencing Comm'n Cmts*; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991).

Tennessee Code Annotated section 40-20-116 mandates restitution of either the property or, if that is not possible, the value of the property in cases in which a defendant has been convicted of "stealing or feloniously taking or receiving property[.]" T.C.A. § 40-20-116(a) (2018). The purpose of ordering restitution is to compensate the victim and

to punish and rehabilitate the defendant. *State v. Johnson*, 968 S.W.2d 883, 884 (Tenn. Crim. App. 1997).

While there is no set formula for determining restitution, above all, the restitution amount must be reasonable. *State v. Smith*, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994). When ordering restitution, the trial court must base the amount on the pecuniary loss to the victim. T.C.A. § 40-35-304(b) (2019); *Smith*, 898 S.W.2d at 747. The amount of restitution ordered, however, "does not have to equal or mirror the victim's precise pecuniary loss." *State v. Mathes*, 114 S.W.3d 915, 919 (Tenn. 2003) (quoting *Smith*, 898 S.W.2d at 747). "Pecuniary loss" is statutorily defined as "[a]ll special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant." T.C.A. § 40-35-304(e)(1) (2019). "Special damages" are "the actual, but not the necessary, result of the injury complained of, and which in fact follow it as a natural and proximate consequence in the particular case. . . ." *State v. Lewis*, 917 S.W.2d 251, 255 (Tenn. Crim. App. 1995) (quoting BLACK'S LAW DICTIONARY 392 (6th ed.1990)). Tennessee law mandates that "[i]n determining the amount and method of payment or other restitution, the court shall consider the financial resources and future ability of the defendant to pay or perform." T.C.A. § 40-35-304(d) (2019). This is because "[a]n order of restitution which obviously cannot be fulfilled serves no purpose for the appellant or the victim." *Johnson*, 968 S.W.2d at 886.

At the time of sentencing, the court must specify "the amount and time of payment or other restitution to the victim and may permit payment or performance in installments." T.C.A. § 40-35-304(c) (2019). Where a defendant is sentenced to supervised probation, as in this case, "any payment or performance schedule established by the court shall not extend beyond the expiration date [of the sentence imposed]." *Id*. § 40-35-304(g)(2). In other words, the court must set a restitution amount that the defendant can reasonably pay within the time that he or she will be under the trial court's jurisdiction. *Smith*, 898 S.W.2d at 747

Theft is a Class B felony "if the value of the property or services obtained is sixty thousand dollars ($60,000) or more but less than two hundred fifty thousand dollars ($250,000)." T.C.A. § 39-14-105(a)(5). In this case, the trial court sentenced the Defendant pursuant to the plea agreement to twelve years, suspended to community corrections, with the trial court to determine restitution at a separate hearing.

The trial court heard the witnesses' testimony and the arguments of counsel regarding restitution. No presentence report was prepared or filed with the court for consideration with regard to restitution. Mrs. Ownbey provided a list of the missing jewelry and individual value for each of the items. Although not a professional in the field of jewelry valuation, Ms. Ownbey relied upon the insurance estimates from the '80s

and, for the uninsured pieces, she explained her method for valuation. The Defendant testified that she was unemployed but that she had recently enrolled in an eighteen-month program to learn about central air and heating and refrigeration. The trial court considered the Defendant's enrollment in school and concluded that there would be "an eventual opportunity" for the Defendant to pay restitution. In ordering restitution, the trial court stated, "I am going to order the amount of $151,385. I am going to right now set monthly payments at $75. $75 per month, but with the understanding that this has to be revisited." The judgment order reflects restitution in the amount of $151,385 to be paid at $75 per month.

We conclude that there was a sufficient basis to allow the trial court to make a determination as to the victim's loss; however, the trial court failed to state with specificity how the restitution amount was determined in light of the victim's pecuniary loss and the Defendant's financial resources and ability to pay. Moreover, as previously stated, when establishing the proper amount for restitution, the trial court should base the figure on what the defendant can reasonably be expected to pay within the time that she is under the jurisdiction of the trial court. T.C.A. § 40-35-304(d) (2019); *Smith*, 898 S.W.2d at 747. Furthermore, the payment schedule is not to exceed the term of the sentence imposed. T.C.A. § 40-35-304(c), (g)(2); *see also State v. Daniel Lee Cook*, No. M2004-02099-CCA-R3-CD, 2005 WL 1931401, at *4 (Tenn. Crim. App., at Nashville, Aug. 10, 2005), *no Tenn. R. App. P. 11 application filed* (concluding that there was no way the appellant could pay $9,000 in restitution at a rate of $150 per month during a sentence of eleven months and twenty-nine days).

Here, the Defendant is serving a twelve-year community corrections sentence, and the trial court ordered her to pay $75 per month to satisfy the $151,385 in the pecuniary loss sustained by the victim. Although the trial court said at the restitution hearing that it would "revisit" the monthly restitution amount, a total restitution amount of $151,385 is shown on the judgment form. This created a situation in which the Defendant could comply with the order of restitution by making the minimum payments of $75 each month, while simultaneously violating the order by not paying the full amount of $151,385 during the twelve-year sentence. *See, e.g., State v. John Tyler Gilley*, No. E2011-01627-CCA-R3-CD, 2012 WL 4358731, at *5 (Tenn. Crim. App., at Knoxville, Sept. 25, 2012), *no Tenn. R. App. P. 11 application filed* (concluding that $9,370 at a rate of $90 per month was an improper amount of restitution to be paid during four years of probation).

While it is true that any unpaid portion of court-ordered restitution may be converted to a civil judgment, the amount ordered in the first place must be reasonable and in accordance with statutory requirements. T.C.A. § 40-35-304(h)(1); *Smith*, 898

S.W.2d at 747.[2]  It is important for trial courts to distinguish between the victim's pecuniary loss and the restitution amount ordered after consideration of a defendant's financial resources and ability to pay.  The pecuniary loss and restitution amount are distinct and in many cases may not be the same amount.

Based on the record as a whole, we conclude that the trial court ordered $75 per month in restitution during the approximately 144-month community corrections sentence, for a total of $10,800, after finding that the victim had suffered $151,385 in pecuniary loss.  Therefore, we reverse the trial court's restitution order and remand the case to the trial court for determination of a restitution amount and a payment schedule which can be completed during the term of the Defendant's sentence.

### C. Presentence Report

Finally, we address the Defendant's contention that the trial court erred in failing to order a presentence report.  Tennessee Code Annotated section 40-35-304 provides, "[w]henever the court believes that restitution may be proper or the victim of the offense or the district attorney general requests, the court *shall* order the presentence service officer to include in the presentence report documentation regarding the nature and amount of the victim's pecuniary loss." (emphasis added).  The trial court should have ordered a presentence report in this case, and we direct the trial court on remand to order a presentence report that includes "documentation regarding the nature and amount of the victim's pecuniary loss" as required by statute.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we reverse the trial court's order of restitution and remand the case for: (1) preparation of a presentence report to be considered in determining restitution; and (2) calculation of a proper determination of the restitution amount.  The restitution amount ordered should be determined after consideration of both the victim's pecuniary loss and the Defendant's financial resources and future ability to pay.  The restitution amount must also provide for a payment schedule and restitution amount that can be completed during the term of the Defendant's sentence.

---

[2] We also note that, for any amount of the total value of the property stolen not included in the amount of restitution, the trial court may establish the deficiency amount, which is subject to collection by execution.  *See* T.C.A. § 40-20-116(a); *State v. Ardie Mae Culbreth*, No. M2007-01157-CCA-R3-CD, 2008 WL 2796467, at *2 (Tenn. Crim. App., at Nashville, July 21, 2008), *no Tenn. R. App. P. 11 application filed*.

_____

ROBERT W. WEDEMEYER, JUDGE